IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Walter C. Kelly, ) | C/A No. 0:14-3870-JMC-PJG |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Joseph McFadden, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

Petitioner Walter C. Kelly, a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 14.) Pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), Kelly was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 16.) Kelly filed a response in opposition to the respondent's motion.[1] (ECF No. 23.) Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion for summary judgment should be granted and Kelly's Petition denied.

## BACKGROUND

Kelly was indicted in October 2009 in Spartanburg County for murder (2009-GS-42-5589). (App. at 106-07, ECF No. 15-1 at 108-09.) Kelly was represented by J. Roger Poole, Esquire, and

---

[1] The court notes that Kelly's response fails to address any of the arguments presented in the respondent's motion or otherwise discuss the merits of his Petition. Rather, Kelly's two-page response consists of a convoluted argument suggesting the respondent's motion should be dismissed based on the Administrative Procedures Act.



on January 19, 2010 pleaded guilty as charged. The circuit court sentenced Kelly to thirty-years' imprisonment. (App. at 42, ECF No. 15-1 at 44.)

Counsel for Kelly filed a notice of appeal pursuant to Weathers v. State[2] and State v. Thrift.[3] (App. at 47, ECF No. 15-1 at 49.) On April 9, 2010, the South Carolina Court of Appeals dismissed Kelly's appeal pursuant to South Carolina Appellate Court Rule 203(d)(1)(B)(iv). (App. at 49, ECF No. 15-1 at 51.) Kelly did not file a petition for rehearing. The remittitur was issued on April 27, 2010. (App. at 50, ECF No. 15-1 at 52.)

Kelly filed a *pro se* application for post-conviction relief ("PCR") on August 17, 2010 in which he raised the following claims:

(a)   Ineffective Assistance of Counsel[;]

(b)   Coercion of Plea by Unauthorized Counsel[.]

(See Kelly v. State of South Carolina, 10-CP-42-4716; App. at 51-61, ECF No. 15-1 at 53-63.) Specifically, Kelly alleged that his counsel was ineffective in that he failed to (1) inform the sentencing court about Kelly's serious mental health issues; (2) allow Kelly adequate time to reflect upon the States' plea offer to the lesser-included offense of voluntary manslaughter; (3) prevent unauthorized counsel, James Cheeks, from coercing Kelly into pleading guilty at the last moment; (4) insist that the court inform Kelly of the nature and elements of the offense to which he pled guilty and to establish an accurate factual basis for the plea; (5) inform Kelly of his right to engage in the

---

[2] Weathers v. State, 459 S.E.2d 838 (S.C. 1995) (finding that a defendant's inquiry regarding his right to a direct appeal from his guilty plea constituted an "extraordinary circumstance" requiring counsel to inform the defendant of his appellate rights).

[3] State v. Thrift, 661 S.E.2d 373 (S.C. 2008) (noting that, absent a sufficient written showing of an appealable issue, an appeal from a guilty plea is subject to dismissal pursuant to Rule 203(d)(1)(B)(iv) of the South Carolina Appellate Court Rules).



Harden-Medlin procedure, to involve the court, his own counsel, himself, and the prosecutor to arrive at a sentence certain, if possible; (6) recognize that Kelly was exceptionally vulnerable to a coerced plea because he had been in solitary confinement for the seven months prior to the plea; and (7) file a notice of appeal following Kelly's guilty plea. (Id., App. at 54-56, ECF No. 15-1 at 56-58.) The State filed a return. (App. at 62-65, ECF No. 15-1 at 64-67.) On September 20, 2011, the PCR court held an evidentiary hearing at which Kelly appeared and testified and was represented by Christopher Brough, Esquire. (App. at 67-97, ECF No. 15-1 at 69-99.) By order filed January 11, 2012, the PCR court denied and dismissed with prejudice Kelly's PCR application. (App. at 98-105, ECF No. 15-1 at 100-07.)

On appeal, Kelly was represented by Wanda H. Carter, Esquire, of the South Carolina Commission on Indigent Defense, who filed a petition for a writ of certiorari on Kelly's behalf that presented the following issues:

I.  The PCR judge erred in denying petitioner's allegation that he pled guilty involuntarily because he was double-teamed by two attorneys, one of whom was his trial counsel, who unabashedly coerced him into pleading guilty in the case.

II. Trial counsel erred in allowing petitioner to plead guilty to the lesser offense of voluntary manslaughter because there was a viable self-defense claim available to petitioner had he exercised his right to a trial by jury in the case.

(ECF No. 15-2.) The State filed a return. (ECF No. 15-4.) On June 6, 2014, the South Carolina Court of Appeals issued an order denying Kelly's petition for a writ of certiorari. (ECF No. 15-6.) The remittitur was issued June 30, 2014. (ECF No. 15-7.) This action followed.

**FEDERAL HABEAS ISSUES**

Kelly's federal Petition for a writ of habeas corpus raises the following issues:

**Ground One:** 6th Amendment violation ("Ineffective Assistance of Counsel")
**Supporting Facts:** (1) Trial Counsel was ineffective in advising Petitioner to plead guilty rather than opting for a jury trial during which a self-defense claim could have been submitted to the jury because the evidence in Petitioner's case satisfied the elements of self-defense; (2) Trial Counsel was ineff[e]ctive in advising Petitioner to plead guilty without providing or discussing the full discovery materials with Petitioner – in particular the autopsy report[;] and (3) Trial Counsel was ineffective in advising Petitioner to plead guilty without conducting a complete investigation into Petitioner's mental health history at the time of the crime which could have revealed information consistent with an insanity defense.

(Pet., ECF No. 1.)

**DISCUSSION**

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor,



529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 562 U.S. 86, 100 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 562 U.S. at 103). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Harrington, 562 U.S. at 101. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's

decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 102. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

**C.     Exhaustion Requirements**

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence



v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.      Summary Judgment Motion**

In Ground One, Kelly presents three claims of ineffective assistance of plea counsel. Specifically, as quoted above, Kelly alleges that plea counsel was ineffective in (1) advising Kelly to plead guilty rather than opting for a jury trial during which a self-defense claim could have been submitted to the jury because the evidence in Kelly's case satisfied the elements of self-defense; (2) advising Kelly to plead guilty without providing or discussing the full discovery materials with him—in particular the autopsy report; and (3) advising Kelly to plead guilty without conducting a complete investigation into his mental health history at the time of the crime which could have revealed information consistent with an insanity defense. (Pet., ECF No. 1 at 5, 7-8.)

**1.      Procedural Default**

The respondent first argues that all of Ground One is procedurally barred from federal habeas review. Specifically, the respondent argues that part one of Ground One was not ruled on by the PCR court and therefore it was not preserved for appellate review. With regard to parts two and three, the respondent argues that although the PCR court addressed these issues in its order denying relief, Kelly did not present them to the state appellate court during his PCR appeal. Upon review of the PCR court order, the petition for a writ of certiorari filed on Kelly's behalf, and the State's return to the petition, the court agrees that parts two and three of Ground One are procedurally

defaulted as appellate counsel did not present these issues to the appellate court.[4]  See Coleman, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); Picard v. Connor, 404 U.S. 270, 275-76 (1971) (stating that to exhaust state remedies, a petitioner's "federal claim must be fairly presented to the state courts" to give the state courts "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding").  Moreover, these grounds would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules if Kelly attempted to raise it now.  See Lawrence, 517 F.3d at 714; Longworth, 377 F.3d 437; see also Coleman, 501 U.S. 722.

While the court finds that parts two and three are procedurally defaulted, or barred from federal habeas review, such claims may nonetheless be considered by a federal court if the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.  In Kelly's Petition, he appears to argue that his procedural default should be excused pursuant to Martinez v. Ryan, 132 S. Ct. 1309 (2012) due to PCR appellate counsel's failure to raise these claims on appeal.

---

[4] The court finds that Kelly's claim in part one is substantially similar to Issue Two presented in the petition for a writ of certiorari filed on Kelly's behalf.  (Compare Pet., ECF No. 1 at 5 with ECF No. 15-3 at 3, 7-9.)  Further, the court notes that in the State's return to the petition, counsel for the respondent argued not that this claim was not preserved for appellate review, but rather, that the PCR court's decision was proper.  (See ECF No. 15-4 at 11-14.)  However, even assuming that the respondent is correct, the court may still proceed to deny Kelly's claims in part one of Ground One on the merits.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003) (stating that "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits") (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997)).



Generally, any errors of PCR counsel cannot serve as a basis for cause to excuse a petitioner's procedural default of his claims. See Coleman, 501 U.S. at 752. However, in Martinez the United States Supreme Court established a "limited qualification" to the rule in Coleman. Martinez, 132 S. Ct. at 1319. The Martinez Court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 1315. However, Kelly's arguments fail to satisfy the limited qualification established by Martinez because ineffective assistance of PCR *appellate* counsel is not cause for default. Martinez, 132 S. Ct. at 1320 (explicitly stating that the "holding in this case does not concern attorney errors in other kinds of proceedings, including *appeals from initial-review collateral proceedings*, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts") (emphasis added); see also Johnson v. Warden of Broad River Corr., No. 12-7270, 2013 WL 856731, at *1 (4th Cir. Mar. 8, 2013) ("Accordingly, because Johnson alleges only ineffective assistance of appellate postconviction counsel, his allegations do not constitute cause for his failure to exhaust under the limited exception in Martinez. Instead, his claims fall under the general Coleman rule that ineffective assistance of postconviction counsel cannot constitute cause for procedural default."); Cross v. Stevenson, No. 11-2874, 2013 WL 1207067, at * 3 (D.S.C. Mar. 25, 2013) ("Martinez, however, does not hold that the ineffective assistance of counsel in a PCR appeal establishes cause for a procedural default.").

Therefore, the court finds that parts two and three are procedurally barred from federal habeas review.

### 2. Part One of Ground One

In part one, Kelly claims that plea counsel was ineffective in advising him "to plead guilty rather than opting for a jury trial during which a self-defense claim could have been submitted to the jury because the evidence in [Kelly's] case satisfied the elements of self-defense." (Pet., ECF No. 1 at 5.) A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of Strickland, a petitioner must show that plea counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. However, to prevail on a claim of ineffective assistance of counsel in connection with a guilty plea, the Strickland test is "some what different." Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000). To establish the prejudice prong of the Strickland test, a habeas petitioner who pleaded guilty must show " 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " Id. (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)) (discussing the Strickland v. Washington standard to establish ineffectiveness of counsel in the context of a guilty plea).



The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 562 U.S. at 105. The Court observed that while " '[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). The Court instructed that the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

The Supreme Court has held that a decision containing a reasoned explanation is not required from the state court. As stated above, if no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. In the case at bar, this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Court of Appeals, which may provide reasons or theories that the appellate court could have relied upon in summarily denying Kelly's petition. Therefore, the court will first consider whether the PCR court's order unreasonably misapplied federal law or was based on an unreasonable determination of the facts. Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland/Hill test in determining that no Sixth Amendment violation occurred.

As summarized by the PCR court, Kelly, his plea counsel, and James Cheek (another attorney involved in Kelly's case) testified at the PCR hearing as follows:

> Applicant testified that Counsel never shared all of the discovery materials with Applicant, but told Applicant that he should take the plea. Applicant testified that he turned the plea offer down three times because he wanted a plea offer for involuntary manslaughter. However, Applicant testified that Mr. Cheek talked with him about the plea and informed Applicant that he would not receive more than a ten[-]year sentence. Applicant also testified that he was not taking his medications properly, had been in solitary since his arrest, was sick, and was not in his right mind to plead guilty. Applicant testified that he now believes the should have gone to trial and he could have argued that the victim rushed him.
> 
> Counsel testified that he met with the Applicant several times and showed Applicant the entire discovery he received, which included statements and investigative reports; although Counsel acknowledged that he may not have shown the Applicant the autopsy report. Counsel testified that the Applicant was 100% cooperative with police and gave them a statement, which provided the history between the Applicant and victim. Counsel also testified that he talked about the possibility of self-defense and involuntary manslaughter with Applicant, but the State was either willing to offer voluntary manslaughter or proceed to trial on charges of murder. Counsel testified that the Applicant informed him that he had not tak[en] his medication that day, but Counsel testified that the Applicant did not appear to have any problems understanding their conversations or discussions regarding the plea. Counsel testified that the Applicant was high strung and nervous, but was not intimidated into pleading guilty by anyone. Counsel testified that Applicant understood his options and although he disagreed with some of the recitation of facts at the guilty plea, he chose to plead freely and voluntarily.
> 
> Mr. Cheek testified that he never informed the Applicant that he would receive a sentence of ten years. Cheek testified that he did recall a conversation with the Applicant about the options of proceeding to trial on a charge or murder or pleading guilty to voluntary manslaughter and Cheek testified that he did tell Applicant that pleading guilty would give him the best chance to return to his family one day. Cheek testified that it was the Applicant's choice to plead guilty that day.

(App. at 101-02, ECF No. 15-1 at 103-04.)

As an initial matter, in denying and dismissing Kelly's application, the PCR court found plea counsel's testimony to be very credible as to his representation of Kelly, and Cheek's testimony to be more credible that Kelly's as to the issues of discussions regarding the plea. (App. at 102, ECF No. 15-1 at 104.) Kelly has failed to challenge this finding and therefore has not provided any



information to clearly show that the credibility determination in the PCR court's order is without support. See Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.' ") (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) and Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008)).

Further, the PCR court considered and rejected each of Kelly's allegations of counsel error. With regard to Kelly's allegation that plea counsel was ineffective in advising to plead guilty rather than proceed to trial and raise the issue of self-defense, the PCR court reasonably found plea counsel met with Kelly, "provided discovery materials, reviewed the elements of the charges, reviewed potential defenses, and reviewed all options with the Applicant." (App. at 102, ECF No. 15-1 at 104.) The PCR court observed that plea counsel "was able to obtain a favorable reduction in the charge from murder to voluntary manslaughter through negotiations with the State" and that "[a]lthough the sentence was more than the Applicant had hoped for, the sentence given by the judge was within the statutory range as set by the legislature." (Id.) The PCR court reasonably found that "the guilty plea transcript indicates that the Applicant was fully aware of the constitutional rights he was giving up and the fact that he was pleading guilty to voluntary manslaughter . . . ."[5] (App. at 102-03, ECF No. 15-1 at 104-05.) Further, the PCR court noted that Kelly "helped himself by being

---

[5] In fact, the plea transcript reflects that after the solicitor reviewed the facts supporting the plea, Kelly initially disagreed with some of the facts. The court permitted Kelly to engage in several discussions with plea counsel, especially after plea counsel conveyed Kelly's disagreements. The court specifically inquired as to whether Kelly was setting up the defense of self-defense. Plea counsel stated that Kelly was not, and the trial court allowed a recess for counsel and Kelly to engage in additional discussions. After the recess, plea counsel reiterated that Kelly wished to plead guilty to voluntary manslaughter and that Kelly's disputes were part of the mitigation aspect of his case, not a claim of self-defense. The court specifically explained to Kelly that he had a right to assert the defense of self-defense, and Kelly responded that he did not wish to assert that defense and reiterated that he wished to continue with the guilty plea. (App. at 12-20, ECF No. 15-1 at 14-22.)



cooperative with the police, but by doing so, he also lessened his chance of success with a PCR [proceeding] (assuming he could establish a deviation from reasonable professional standard by his lawyer) because any deficiency would not have likely [led] to a contrary result." (App. at 103, ECF No. 15-1 at 105.) Thus, the PCR court reasonably found that Kelly failed to meet his burden of proof as to his allegations of ineffective assistance of plea counsel. (App. at 101, 103, ECF No. 15-1 at 103, 105.)

Upon thorough review of the parties' briefs and the record in this matter, the court finds the PCR court's analysis to be reasonable and concludes that Kelly cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting this claim or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). Thus, Kelly cannot show "there was no reasonable basis" for the state appellate court to deny relief. Harrington, 562 U.S. at 98. As observed by the Harrington court, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 562 U.S. at 101. As noted above, Kelly does not provide any argument with regard to the claims presented in his Petition in his response to the respondent's motion for summary judgment.

Upon careful review of the record and the PCR court's order, for all of the reasons discussed by the PCR court, the court concludes that Kelly has failed to establish that plea counsel's actions were error, much less that they were objectively unreasonable such that it rendered his performance deficient. Kelly's arguments fail to demonstrate that any of the PCR court's findings were unreasonable nor have they shown that the PCR court's analysis of these issues misapplied clearly

established federal law or, even if there was an error, that it was unreasonable. See Williams, 529 U.S. at 410; see also Harrington, 562 U.S. at 101. Accordingly, the respondent's motion for summary judgment should be granted as to part one of Ground One.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 14) be granted and Kelly's Petition denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 3, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).